## J. F. LEE ET AL. v. LYDIA McMILLAN.

ERROR TO THE COURT OF COMMON PLEAS OF WAYNE COUNTY.

Argued February 26, 1889—Decided March 25, 1889.
[To be reported.]

1. In a proceeding to charge land of a devisee with the payment of a judgment recovered against the representative of the testator, the ordinary writ of scire facias to revive et quare executionem non, with notice to the devisee and duly served, was held good on demurrer.
2. If, upon the trial of the scire facias, facts are put in evidence by the devisee which strongly impeach the original judgment as collusive and fraudulent, as matter of law the burden is shifted upon the plaintiff to establish the debt with which it is sought to charge the real estate.
3. Where the burden of proof lies in the first instance and when a sufficient case has been made out to shift it, are questions of law for the court, and after evidence on the part of the devisee, such as stated, the judgment is entitled to no presumption in its favor.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 26 July Term 1888, Sup. Ct.; court below, No. 189 December Term 1886, C. P.

On February 5, 1887, a scire facias issued by Lydia McMillan, administratrix of Alexander McMillan, deceased, against John F. Lee and George A. Starkweather, executors of the will of F. L. McMillan, and Libbie Stevenson, devisee under said will, upon a judgment entered on May 22, 1883, to No. 153 March Term 1883, in favor of Alexander McMillan against C. M. Betz, administrator of F. L. McMillan, deceased, the writ being in the following form:

WAYNE COUNTY, *ss.*

*The Commonwealth of Pennsylvania.*

To the Sheriff of Wayne County, Greeting:

*Whereas,* Alexander McMillan lately in our Court of Common Pleas of Wayne County, of the term of March A. D., 1883, No. 153, recovered against C. M. Betz, administrator of Frank L. McMillan, a certain judgment twenty hundred ninety-four and seventy-eight one-hundredths dollars, and as well one and seventy-five one-hundredths dollars, cost of suit; and whereas, the lien of said judgment would expire in five years after the said recovery, without due process of law to revive and continue the same : Therefore we command you that you make known to the said John F. Lee and George A. Stark-weather, executors of F. L. McMillan, and Libbie Stevenson, devisee, that he be and appear before our said Court, at Honesdale, on the 1st Monday of March next, to show cause why the said judgment shall not be revived and the lien thereof continued, pursuant to the Act of General Assembly in such case made and provided, and why execution thereof shall not be had according to the form and effect of said recovery. And have you then and there this writ. Witness, etc.

Appearances having been entered, the executors confessed judgment de bonis testatoris, amount due to be liquidated by the prothonotary. Libbie Stevenson, named as devisee, demurred to the writ, on the ground that it did not aver that the decedent, F. L. McMillan, against whose administrator the original action was brought and judgment obtained, died seised of real estate, or devised real estate to the said Libbie Stevenson ; nor that the plaintiff intends to charge real estate devised by said decedent to said Libbie Stevenson with the debt for which said action was brought; nor does it require the said Libbie Stevenson to show cause why real estate devised to her by said decedent should not be charged with said debt, or why said judgment should not be levied or paid out of such real estate.

On December 8, 1887, the said demurrer was overruled, with leave to the devisee to plead to the scire facias.

The defendant then pleaded, that the judgment on which the writ of scire facias was issued was entered on an award of arbitrators, which award was obtained without consideration,

Charge of Court below.

and by collusion between the plaintiff therein, Alexander Mc-Millan, and his son-in-law, C. M. Betz, administrator of F. L. McMillan, deceased, the defendant therein, with no indebtedness existing on the part of said F. L. McMillan to said Alexander McMillan, and with intent thereby to defraud the said devisee; and that at the time said award was obtained the said Alexander McMillan was in fact indebted to the said F. L. McMillan.

At the trial on December 9, 1887, the plaintiffs having made out their prima facie case by the reading of the proper records, the defendants adduced testimony tending to sustain the averments of the plea and sufficiently appearing in the opinion hereafter, when the court, SEELY, P. J., charged the jury:

The parties to this issue, are the administratrix of Alexander McMillan as plaintiff, and the executors of F. L. McMillan, and Libbie Stevenson, devisee under the last will and testament of F. L. McMillan, as defendants. The purpose of the proceeding is to revive a judgment obtained against the administrator of the estate of F. L. McMillan, so as to make it a charge upon the lands devised by the last will and testament of F. L. Mc-Millan to Libbie Stevenson.

For some time after the death of F. L. McMillan, no will appeared, and letters of administration were granted to C. M. Betz. While he held those letters of administration, a suit was brought, upon which a judgment was recovered which it is sought to revive and make a charge upon lands, by this proceeding. Subsequently, the will appeared, which was duly proved, and the letters to Mr. Betz were vacated, and letters testamentary, under the will, granted to John F. Lee and G. A. Starkweather. As to them a confession of judgment has already been made in court, and, perhaps, aside from the confession of judgment, they might not be able to present any defence in this suit. If this judgment is to be paid, it must be paid out of the lands of the decedent, for the evidence shows that there is no personal property for the payment of debts. The situation then is, the suit brought against the administrator, before the will was proved, a judgment recovered, and an attempt now to compel the payment of that judgment, out of the lands of the decedent devised to Libbie Stevenson.

Libbie Stevenson was no party to the original action, and had no opportunity to be heard; her rights so far as they were affected were passed upon in her absence, without the privilege of even scrutinizing the claims which were presented in that action. . . . . Because she was not heard at the time of this original suit, and had no opportunity to defend, the law now permits her in this proceeding to make such defence to the plaintiff's claim, as she might have made, had she been a party to the original action. One difficulty with which she is met here is, that up to this time, we have not disclosed any part of what was the cause of this original action. In a general way, it was composed of notes, moneys advanced, moneys expended for permanent repairs to the property, or advanced in one way or another for the benefit of the decedent, the testator, but as to the dates of these items, how long they had been running, or as to furnishing any opportunity for scrutiny of these claims, the information which is vouchsafed by the plaintiff, gives to the defendant no such opportunity. Now, that, by no means, justifies the charge of collusion. We do not speak of it as justifying that charge, but only to express the opinion, which seems to be a proper one under the evidence, that this plaintiff and the parties representing this claim, in fairness, ought to have presented to the defendant, the devisee, more definite information with regard to it.

The judgment recovered is prima facie evidence of the claim. All that is necessary in order to establish the claim, in the first instance, is to show by the proceedings in this case, as put in evidence, the record showing the judgment recovered, and it rests upon the devisee to attack that judgment. She may attack it in two ways; first, by attacking the claim itself, and showing that that claim was an illegal and unjust claim, or, was subject to set-offs by which it might be reduced from the amount for which the judgment was recovered; that is, by setting up any such defences as she might have set up, had she been a party present at the time the claim was presented to the arbitrators. Another way of attacking it, is, by showing to the jury that the judgment was collusively obtained. The first ground of attack hardly seems possible here. It would hardly seem possible to prove a negative, that the claim was unjust, without having the subject matter of the claim more definitely presented, than it has been presented here.

### Charge of Court below.

The face of the judgment is attacked, principally on the ground that it is collusive. Collusion is an agreement between two or more parties, in order to defraud some other person of his rights, by the forms of law. If the parties, Mr. Betz as administrator of F. L. McMillan, and Alexander McMillan as plaintiff, entered into an agreement by which it was agreed an action should be commenced against the administrator and not honestly contested, but that the plaintiff should be allowed to recover a judgment for matters for which he ought not to have recovered—for matters which were actionable, but which ought to have been contested, and to recover such a judgment in order that he might receive moneys from this estate, which otherwise belonged to the heirs and devisees, then, the judgment was collusive. Perhaps we should repeat this, gentlemen. If these parties, Mr. Betz and Mr. McMillan, united in an agreement that an action should be brought against the administrator, and that he would withhold defences which ought to have been presented, or would improperly permit judgment to be obtained against him, the administrator, for matters for which Mr. McMillan was not entitled to recover, which he could not present as honest claims against the estate, and if by reason of such judgment the plaintiff may receive from the estate, moneys or property which otherwise would go to the heirs or to the devisees, then, such judgment was collusive and fraudulent, a fraud upon the rights of the heirs and devisees.

In order that you may understand the manner in which this issue comes to you, we now answer certain points which have been presented to us in writing by the counsel of Miss Stevenson, the devisee.

1. The original judgment in this case has been so far impeached, as to throw the burden of proof upon the plaintiff.

Answer: Refused. We refuse that point, because that question is for the jury, and not for the court.[2]

2. The plaintiff having given no evidence of the debt with which it is sought to charge the decedent's real estate, there can be no recovery against the devisee.

Answer: Refused, because it depends on the solution of the question whether there was collusion. It is a question for the jury.[3]

3. That if the jury believe from the evidence, that the

original judgment was obtained by collusion between Alexander McMillan, and C. M. Betz, administrator of F. L. McMillan, the burden of proof for which the suit was brought, is thrown on the plaintiff, as against the devisee.

Answer: Affirmed. If the jury believe that the judgment was collusively obtained, then the burden rests upon the plaintiff to establish that claim in this case, outside that judgment.

 * * * * * * * *

We said that the judgment was prima facie evidence of the claim. If this judgment is sufficiently attacked to satisfy the jury that it was collusively obtained, then it is no longer prima facie evidence of any claim, and it would become necessary for the plaintiff to prove the claim in this action. So the question comes to you, was this judgment collusively obtained?

The law does not presume fraud. The law presumes men to be honest rather, and he who asserts a fraud or collusion must establish it by competent evidence. F. L. McMillan died March 3, 1883. At some time in May, 1883, the will appeared at the office of the register and was subsequently admitted to probate and letters testamentary granted upon it. That was in May, but we have not the time in the month of May when it occurred. On April 14th, this action was brought by Alexander McMillan against C. M. Betz, as administrator of Frank McMillan's estate. It is charged that there was collusion. The defendant has attempted to sustain that charge, first, by showing the circumstances under which the suit was brought; second, by showing the relation of the parties, between whom this contest existed; third, by showing the manner in which it was conducted. At the time this suit was brought, it is not alleged that Mr. Betz had any knowledge of the existence of the will. All that he knew was, that this estate would, if Frank McMillan died intestate, go to the heirs named here as the Ricks heirs; or, in case a will should appear, would go to the devisees under the will. At that point he was charged with no duty of notifying the devisee, there being no will presented. He testifies, and it is not contradicted, that he did inform the heirs—the Ricks heirs, Mr. Keene, whose wife was present at the time, he did inform them of the purpose to bring this suit. He states that the suit was brought because of the relation of the parties;

Charge of Court below.

because, the plaintiff being his father-in-law, he did not desire to assume the responsibility of passing upon his claim, and for his own protection, under the advice of counsel, this suit was brought in order that the plaintiff might be required to prove his claim. Notice to the Ricks heirs is introduced in evidence, for the purpose of showing that there was no collusion, no intent of concealment, but that he had made an effort when the suit was brought to notify the only parties of whom he had any knowledge that they had an interest in the issue. Arbitrators were chosen, and this suit proceeded as the law permits, a very common proceeding with reference to such contests. The case came before the arbitrators; whether before or after this will appeared, is not disclosed in the case. It was heard before the arbitrators. You have, gentlemen, the testimony as to how that case was conducted, whether it was fairly tried; whether the conduct in that suit before the arbitrators, satisfies you that there was no unlawful combination between Mr. Betz as administrator and his father-in-law as plaintiff by which he withheld any proper defence and permitted him to recover that which he ought not to have recovered in that action.

The statute of limitations was not pleaded. It does not appear whether any part of the claim was subject to the plea of the statute of limitations. Objection is made that Mr. Minor, as counsel for the administrator, called the plaintiff on the stand, so making him competent to testify to his own claim, which he could not have done, except at the instance of the administrator. That is a matter for you; what he testified to, does not appear here. Whether his claim was fully established before he rested his case, and he was called to explain matters that seemed to require explanation, or whether he was called in order to permit him to sustain a case that was defective, and could not be established, that matter does not appear in the case.

We said before, that the duty or burden rested upon the defendant to show you that the judgment was collusively obtained, if that fact is to be found. Then, evidence is introduced as to what care there has been on the part of Miss Stevenson, through her counsel, to find out what this suit was about, and what it was for. It is alleged that there was an im-

proper withholding of this claim, in the sense that it indicates impropriety in the action of the administrator, and of the counsel. Mr. Mumford states that in answer to Judge Wilson's request, he gave him a statement, as he remembered, of these notes; that the list he had was left at the arbitrator's room, and that he gave Judge Wilson all the information he could give. Mr. Betz testifies that he had not the notes, that he had not the memoranda; that he went to Mr. Minor for the purpose of obtaining them, and that he gave at some other time such information as he was able to obtain to Judge Wilson. While Miss Stevenson may have a right to complain at the withholding of information, if that withholding was necessary, if those parties were unable to give her the information, they are not to blame. Evidence is produced here, and it is alleged that the conduct of these parties subsequent to the trial before the arbitrators throws light upon the intent and conduct of the parties at the time of the trial of this suit. Now, gentlemen, without attempting to go over all the evidence as to what occurred between those parties before or after that suit— it has been fully argued by the counsel upon the one side or upon the other—you must inquire whether this evidence satisfies you that that judgment was collusively obtained. Whether this arrangement, if there was any arrangement, between Mr. Betz and Mr. McMillan, was made at the time of this suit for the purpose of enabling Mr. McMillan to recover a judgment which he ought not to recover.

Mr. Wilson: As your honor has alluded to the fact that Mr. Betz gave some notice to one of the heirs at law, we wish also that attention should be called to the fact that he neglected to give notice to the devisee of a suit being brought, although he could have done so after the will came, before the time for appeal had expired.

By the court: We have said to you that this will did not become known to Mr. Betz until after the judgment obtained upon the award of arbitrators. It did not become known to him before the time for appeal from the award of arbitrators had expired, and it is a fact, that he gave no notice, and undertook to give no notice to Miss Stevenson of the obtaining of this judgment. There was no legal requirement upon him that he should give such a notice. If this judgment were

VOL. CXXV—6

fairly and honestly obtained, it was not necessary, either that he should appeal, or that he should give her notice ; but the fact is presented here, and is to be considered in connection with the notice which he did give to the Ricks heirs in the beginning, to show, as alleged by the defendant, that in the obtaining of this judgment, there was a purpose to allow Mr. McMillan to obtain some unlawful advantage which he might not otherwise obtain ; that the administrator failed to do his duty in not contesting this judgment more earnestly by appeal, by not bringing this suit in the Court of Common Pleas for trial.

 *  *  *  *  *  *  *  *

Now, gentlemen, take the case ; the issues are simple enough. Was this judgment collusive ? If it was not, then find for the whole amount, unless the defendant has shown some offset which should be deducted from the amount of this judgment. If the judgment was collusive, then it cannot be sustained in this court, and the plaintiff can only recover such amount as he has by competent evidence in this case, shown to be due from F. L. McMillan to Alexander McMillan. As you find, render your verdict.

The jury returned a " verdict for the plaintiffs, deducting from the judgment the amount of $400 for timber and ties ; " verdict recorded for the balance, $2,216.12. Judgment having been entered, the defendant Libbie Stevenson, took this writ, assigning as error :

 1. The overruling of defendant's demurrer.[1]
 2. The answer to defendant's first point.[2]
 3. The answer to defendant's second point.[3]

*Mr. H. Wilson* and *Mr. Thomas F. Wells*, for the plaintiff in error :

 1. It is an elementary principle, that, in pleading, every material fact must be directly and distinctly set forth ; it is not enough to recite circumstances from which they may be inferred. In this case, the writ recites, as the debt, the judgment obtained against C. M. Betz as administrator, but it is silent as to all other essential points. It nowhere sets forth any cause of action against the devisee, or any reason for mak-

ing her a party to the action. She is merely called upon to show cause why the judgment should not be revived and its lien continued, and why execution thereof shall not be had according to the form and effect of said recovery.

2. The proceeding, as to heirs and devisees involves no question of lien: Sample v. Barr, 25 Pa. 457; Colwell v. Rockwell, 100 Pa. 133. As to execution, the form and effect of the recovery authorized execution against the personal estate, and this the heirs and devisees cannot gainsay. The scire facias, therefore, merely called on the devisee to show cause as to one matter not involved in the action, and as to another respecting which she had no right to be heard. But as to the one essential matter involving her rights in the decedent's estate, by virtue of which she is to be made a party to the action, the writ is silent. The court should therefore have given judgment for the devisee on the demurrer: McKinney v. Mehaffey, 7 W. & S. 276; Barr v. Hall, 3 W. 298; Moore v. Skelton, 14 Pa. 360.

3. It is not to be questioned that heirs and devisees may contest a judgment against an executor or administrator on original grounds, and make the same defence that could have been made in the original action, may disprove the claim, or show other ground of defence: Benner v. Phillips, 9 W. & S. 13; Stewart v. Montgomery, 23 Pa. 412; Dean's App., 87 Pa. 27; Murphy's App., 8 W. & S. 165. But the right of heirs and devisees to disprove the claim will be of little avail, if it is nothing more than the right to prove a negative: Rogers v. Hall, 4 W. 362. Nor can it be denied that it is the province of the court to determine when a prima facie right has been so far impeached as to shift the burden of proof; in this case whether the original judgment was so far impeached as to throw on the plaintiff the burden of sustaining it by evidence of the debt, on which it was founded: Twitchell v. McMurtrie, 77 Pa. 383; Albietz v. Mellon, 37 Pa. 370; Redfield etc. Mfg. Co. v. Dysart, 62 Pa. 66; Rogers v. Hall, 4 W. 362.; Clements v. Moore, 6 Wall. 299. An examination of the evidence offered to impeach the plaintiff's judgment, will show that it meets and more than meets all the requirements necessary to throw the burden of proof on the plaintiff.

*Mr. A. T. Searle* and *Mr. E. C. Mumford*, for the defendants in error:

1. Section 34, act of February 24, 1834, P. L. 80, provides that in all actions against executors or administrators of a decedent who shall have left real estate, when the plaintiff intends to charge the real estate with the payment of his debts, the widow and heirs shall be made parties thereto, and notice of such writ shall be served on such widow and heirs or devisees and the guardians. The writ to revive this judgment made the executors and devisees parties thereto and fully recited the original judgment, stating the amount and naming the parties, and called upon the devisee to show cause why the judgment should not be revived, etc. There is no case where the writ of scire facias to revive a judgment has been set aside when the original judgment was properly stated, parties properly named, and there was a cause of action with writ duly served: Dougherty's Est., 9 W. & S. 195.

2. That the original judgment on the award in this case, was prima facie evidence of the plaintiff's claim, there can be no doubt: Sergeant v. Ewing, 36 Pa. 156; Phillips v. Railroad Co., 107 Pa. 465. This being so, it is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only: to be of any avail it must be clearly proved: Morton v. Weaver, 99 Pa. 47; Mead v. Conroe, 113 Pa. 220. We submit that, the plaintiff having once regularly proved his claim before a competent tribunal and judgment therein having been entered in his favor, it must stand unless impeached by clear and positive evidence, and the court certainly did all that it could be asked to do when it left the question of fraud to the jury.

OPINION, MR. JUSTICE MITCHELL:

The form of the scire facias to revive et quare executionem non, etc., in the present case, though not in all respects admirable, is substantially that which has been in general use for more than half a century, and has too often passed the scrutiny of the courts to be overthrown at this day. The first assignment of error is therefore not sustained.

The trial developed the following facts: Francis L. McMillan died March 3, 1883, at Kansas City, owning certain land in

Wayne county of this state. It was not known definitely whether he died intestate or not, but in the absence of a will, his father, who lived on the land, was next of kin and entitled to administration, which, however, he renounced in favor of Betz, his son-in-law, and on April 9th letters were issued to Betz. On April 14th the father brought an action of assumpsit against the administrator, a narr in the common counts was filed, and a rule of reference to arbitrators. The parties met on May 22d, and on that day an award was made in favor of the father for $2,094. It was shown that this award was based on a statement made up by the father, covering items running back from five to ten years, supported in part by notes, letters acknowledging the receipt of money and registered letter receipts, and in part by the father's own oath. The son-in-law administrator did not set up the statute of limitations, and when one of the arbitrators asked if they ought to throw out claims which were outlawed, he was told it was not the duty of arbitrators to consider legal questions, and that if the statute of limitations was not pleaded it was not usual to consider it. The administrator made no defence, either on the statute or by objection to the father as a clearly incompetent witness; nor did he ask for time or opportunity to investigate the claims, though it was shown that he knew of the habit of the father to cut and sell timber off the son's land, which might either explain the remittances of money or show a set-off.

The award, as said, was made on May 22d, and in the same month, whether before or shortly after the award, did not appear, the will of Francis L. McMillan was received by the register, in which the land was devised to his cousin, Libbie Stevenson, one of the plaintiffs in error.

The probate and letters testamentary were, however, delayed by caveat and other proceedings until March, 1885. In the meantime, on June 11, 1883, the administrator, Betz, filed a petition in the Orphans' Court for the sale of the land to pay the debts of the decedent of which the award to the father constituted more than two thirds. No notice was given by Betz to the devisee either of the award or of the petition to sell the land, which he then knew was hers, and the first information she had of either was from the advertisement of the land for sale. Her counsel at once entered on an investigation of the

claims on which the award was founded, but was baffled at every point by evasion or refusal to produce the original evidence, and assertions of ignorance. The order of sale wa. however, stayed by the Orphans' Court, and, the administrator having filed his account, the devisee paid the claims and expenses allowed by the auditor. This scire facias was then issued to charge the award against the land. At the trial, the plaintiff rested on the prima facies of the award, and all efforts of the defendant to get the particulars met with failure.

With the foregoing facts proved, and on this state of the evidence the court were asked to charge, "First, that the original judgment has been so far impeached as to throw the burden of proof upon the plaintiff," and, "Secondly, the plaintiff having given no evidence of the debt with which it is sought to charge the decedent's real estate, there can be no recovery against the devisee."

To the first point the court answered : "We refuse that point, because that question is for the jury, and not for the court." This was an error. Where the burden of proof lies in the first instance, and when a sufficient case has been made out to shift it, are questions of law for the court. The credibility of the evidence is, of course, for the jury, but in this case the facts were substantially uncontroverted, and the jury should have been told that the award, having been obtained by incompetent testimony and under circumstances bearing strong evidence of fraud and collusion, was not entitled to any presumption in its favor, as against the devisee, who had had no opportunity to contest it.

The second point was refused, "because it depends on the solution of the question whether there was collusion." For the reasons already stated under the first point, this was error. The defendant was entitled to an unqualified affirmance of this point.

For these errors the judgment must be reversed.

Judgment reversed, and venire facias de novo awarded.